*213 OPINION.
Siepkin :
The contention that the payment by petitioner to one of its stockholders is an allowable deduction is not persuasive. Had Hearn been permitted to purchase the stock he claimed he was entitled to buy, the purchase would have been a capital transaction resulting in neither gain nor loss to the corporation, irrespective of the price paid therefor. Simmons & Hammond Mfg. Co., 1 B. T. A. 803; Atlantic Carton Corporation, 2 B. T. A. 380; Illinois Rural Credit Association, 3 B. T. A. 1178; Liberty Agency Co., 5 B. T. A. 778.
As was pointed out in the Simmons case, the only result so far as the corporation is concerned is a change in the capital structure. If stock is sold for less than the value of the net total of corporate assets divided by the number of shares outstanding, the increase in capital is not proportionate to the increase of shares into which it is divisible, and the value of the stock outstanding prior to the sale is reduced. Such reduction, however, affects only the owners of the stock.
It thus appears that Hearn’s alleged right to purchase stock is of primary concern only to the stockholders among themselves. That this is true is strikingly illustrated by the fact that the corporation was not a party to the settlement contract, as well as by the terms of the agreement. Under the agreement Hearn might have elected to receive $30,000 from Matthews for his release. Had he so elected, the corporation would obviously have had no deduction claim. In. that event it would only have been saved an increase of stock without a corresponding increase of capital. Are the fundamentals altered by reason of Hearn’s election to take payment from the corporation ?
The contract provided such payment was to be made in the form of a transfer of certain properties which the corporation had con- *214 traded to sell, or the proceeds consisting of $15,000 cash and a $32,500 purchase money mortgage. Such cash and mortgage had a face value of $47,500. Why the discrepancy between the amounts of $30,000 if settled by Matthews and $47,500 if settled by the corporation? Manifestly the difference is due to the recognition by the parties of the fact that any payment made by the corporation would decrease the value of Hearn’s stock and the payment of $30,000 by the corporation would not represent the same adjustment between the two stockholders. As their stockholdings were in the ratio of 2 to 1, it would have required a half larger payment in cash, or $45,000, if made by the corporation to be the equivalent of the payment of $30,000 by Matthews to Hearn. [The discrepancy between $45,000 and the amount stated in the contract, $47,500, may be accounted for by a discounting of the face value of the mortgage to reach actual values. The discrepancy between the contract sum and the $40,500 actually paid is unexplained.]
It thus appears clear that the parties recognized the true character of the dispute, i. e., it was a matter of primary concern only to themselves as stockholders.
The cases cited by petitioner are wide of the mark. They for the most part relate to compromise payments of claims arising by reason of business relations of corporations Avith third parties. In such cases the claims, if paid, would have been allowable deductions, and it follows that the compromise settlements in lieu of full payments were likewise deductible. Whether legal expenses incurred by a corporation in resisting such a claim as the one made in the instant case would be deductible, we need not decide, as the settlement payment was a compromise of the claim and not legal expense, though the- saving of legal expenses may have been an inducement to compromise.
The case of Murray Hospital v. Rasmussen, 20 Fed. (2d) 29, which is cited by petitioner as the controlling case, is clearly distinguishable on the facts. The claims compromised by the payment therein related to claims for services rendered and for heating, as well as a stockholder’s suit for appointment of a receiver and an injunction. Petitioner urges that controversies, other than the disputed right to purchase stock, were settled by the contract between the parties in the instant case. That is true, but it does not follow that the settlement was in any sense inspired or influenced by such other controversies which, apparently, were of minor consequence. The acknowledgment of payment clearly indicates that at least Hearn considered it made in settlement of the principal point of difference between the stockholders. Furthermore, there is no attempt to apportion the payment made among the several controversial matters if it related to more than one. Accordingly, we are in no position *215 to alter the respondent’s determination, which is based on his finding that it was a settlement of the alleged right to subscribe. Whether the suit by a stockholder for a receiver and injunction, which was under consideration in the cited case, is in any wise similar to the action started by Hearn to establish his right to purchase stock, we need not now consider, as the Murray case does not decide a payment in settlement of the receiver suit was deductible. It merely overrules a demurrer giving the complainant an opportunity to present his case on the merits.
Reviewed by the Board.

Judgment unLl he entered for the respondent.

Van FossaN concurs in the result only.